FILED

2020 Jul-13  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| ANDREA STRONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PARKDALE MILLS, INC., | ) |
| | ) |
| Defendant. | |

---

## **COMPLAINT**

## I. **JURISDICTION**

1.  This is a suit for relief from employment discrimination instituted pursuant to the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.,* Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq*., and 42 U.S.C. §1981 ("§1981").  Jurisdiction of this Court exists pursuant to 28 U.S.C. §§1331 and 1343(4).

2.  Plaintiff Andrea Strong ("Plaintiff") timely filed a charge of discrimination against defendant Parkdale Mills, Inc. ("Defendant") with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment.  Plaintiff has further filed this suit within 90 days after receipt of her right-to-sue letter issued from the EEOC.

## II.  <u>PARTIES</u>

3.  Plaintiff is a citizen of the United States over the age of nineteen and a resident of Attalla, Etowah County, Alabama.

4.  Defendant is a corporation headquartered in North Carolina.  It is and was at all times relevant to this complaint an employer as contemplated under Title VII and the ADA.

## III.  <u>STATEMENT OF FACTS</u>

5. Plaintiff is African-American.

6.  Plaintiff has, and had during the events of this case, dilated cardiomyopathy, an abnormality of the heart muscle that affects the heart's ability to pump blood and, as in Plaintiff's case, causes an irregular heartbeat.

7.  In or about October of 2017, Plaintiff became employed by Defendant at its manufacturing facility in Leesburg, Cherokee County, Alabama.

8.  In or about February of 2019, Plaintiff went out on medical leave to have an implantable cardioverter defibrillator ("ICD") implanted under her pectoral muscle.

9.  Plaintiff's position when she went on leave was Spinner.

10.  Spinner is a production position that required Plaintiff to work with her arms over her head throughout her shift.

11.  Before she went on medical leave, Plaintiff had been working in Mill 1.

2

12.  On or about April 9, 2019, Plaintiff returned to work.

13.  Plaintiff was returned to work with a restriction from her physician that she not work with her arms over her head.

14.  The restriction from Plaintiff's physician was delivered to Tasia Jones, Defendant's Human Resources Manager at the facility at the time.

15.  When Plaintiff returned to work, Defendant did not accommodate the restriction given by Plaintiff's physician.

16.  Rather, Plaintiff was returned to working as a Spinner with no job modifications or other accommodation.

17.  Further, within a week from returning, Plaintiff was reassigned to work in a more physically demanding Spinner position in Mill 2.

18.  Constantly working with her arms over her head caused Plaintiff a lot of pain around the area of her ICD.

19.  As a result, Plaintiff struggled to keep up with the work.

20.  Plaintiff's supervisor was Mark Pruitt.

21.  Pruitt is Caucasian.

22.  Pruitt had made the decision to move Plaintiff to Mill 2.

23.  Pruitt moved Plaintiff to Mill 2 as a result of his agreement to move Megan Brooke, a Caucasian Spinner, out of her position there.

24.  Pruitt had agreed to move Brooke because she was struggling with the work in Mill 2.

25.  On or about May 15, 2019, Pruitt asked Plaintiff about being able to keep up with the work in Mill 2.

26.  Plaintiff told him about her heart condition, her ICD, the restrictions her physician had given when she returned to work, and that she was slowed in her work due to the pain she was experiencing doing it.

27.  On or about May 16, 2019, Plaintiff met with Jones.

28.  Plaintiff told Jones that she was having problems keeping up with work in Mill 2 because of the pain she was in from her ICD and that the work she was doing was beyond the restriction her physician had given.

29.  Jones took Plaintiff to meet with Plant Manager Matt Hardegree and Pruitt.

30.  They discussed Plaintiff's heart condition, ICD, her work restrictions, and her problems working in Mill 2 due to the pain.

31.  Plaintiff asked if she could get fewer frames to work as a Spinner or be moved to another position.

32.  Pruitt said that there was nowhere to move her.

33.  This was not true.

34.  There were at the time open positions of Can Hauler and Utility.

4

35.  Plaintiff was qualified for both of these positions and had worked as a Can Hauler before she was a Spinner.

36.  Placing Plaintiff in either position would not have been a promotion for her or involved a pay increase.

37.  Plaintiff could have performed the essential functions of either of these positions within her physician's restrictions.

38.  Hardegree said that they would not accommodate Plaintiff's condition no matter what restrictions her physician gave, that they would not move her, and that she had to do her job as Spinner 100% to continue working there.

39.  On or about May 17, 2019, Plaintiff went to see her physician due to the pain she was in.

40.  Plaintiff's physician put her in the hospital for testing.

41.  It was discovered that Plaintiff's ICD had moved upward in its pectoral pocket.

42.  This was due to Plaintiff working with her arms over her head, against her physician's restrictions.

43.  Plaintiff's physician recommended that the ICD be re-positioned.

44. Plaintiff's physician took her off work and advised that, if she had the ICD re-positioned, it would move upward again if she continued working with her arms over her head.

45. On or about May 27, 2019, Plaintiff was released to return to work, again with a restriction from her physician that she not work with her arms over her head and also a request from her physician that she be moved to a position that did not require that.

46. When Plaintiff tried to return to work on or about May 29, Pruitt told her that Hardegree had said that she could not work with the restrictions.

47. Consequently, Plaintiff was not allowed to return to work.

48. At the time, there were still open Can Hauler and Utility positions Plaintiff could have moved into.

49. On or about July 10, 2019, Plaintiff had a second ICD implanted due to the first one having moved in its pocket, as set forth above.

50. Plaintiff was released to return to work September 2, 2019 with the same restrictions as before.

51. Plaintiff was allowed to return to work on September 9, 2019.

52. Plaintiff has worked since then as a Can Hauler and is able to perform the essential functions of that job with her restrictions.

## IV.  CAUSES OF ACTION

### COUNT I

### ADA / APRIL 2019

53.  Paragraphs 1-52 are incorporated herein.

54. Plaintiff's dilated cardiomyopathy constituted a physical impairment under the ADA.

55.  Due to this impairment, Plaintiff was and is substantially limited with respect to the major life activity of the operation of her cardiovascular system.

56.  Plaintiff is and was during the events of this case disabled under the ADA.

57.  Plaintiff was and is a qualified individual able to perform the essential functions of her position, with accommodation.

58.  Defendant violated Plaintiff's rights under the ADA by failing to provide a reasonable accommodation for her disability when she returned to work in April of 2019 by not following her physician's restrictions and either modifying her duties or moving her to an open position.

59.  Defendant's failure to accommodate Plaintiff's disability caused her ICD to move in its pectoral pocket, which required a new ICD implantation.

60.   As a result of the above described discriminatory act, Plaintiff has been made to suffer physical pain and suffering, temporary and permanent physical injuries, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate the ADA;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

### ADA / MAY 16, 2019

61.  Paragraphs 1-52 and 54-57 are incorporated herein.

62. Defendant violated Plaintiff's rights under the ADA by (a) discriminating against her because of her disability and/or (b) failing to provide a reasonable accommodation for her disability in denying her request of on or about May 16, 2019 to either modify her duties or move her to an open position.

63.  Defendant's denial of Plaintiff's request further contributed to her ICD moving in its pectoral pocket, which required a new ICD implantation.

64.   As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages, physical pain and suffering, temporary and permanent physical injuries, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

9

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by providing back-pay and lost benefits with interest and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT III

## TITLE VII / MAY 16, 2019

65.  Paragraphs 1-52 are incorporated herein.

66. Defendant violated Plaintiff's rights under Title VII by denying her request of on or about May 16, 2019 to either modify her duties or move her to an open position because of her race.

67.  Defendant's denial of Plaintiff's request further contributed to her ICD moving in its pectoral pocket, which required a new ICD implantation.

10

68.   As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages, physical pain and suffering, temporary and permanent physical injuries, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated Title VII;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate Title VII;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by providing back-pay and lost benefits with interest and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT IV

## §1981 / MAY 16, 2019

69.  Paragraphs 1-52 are incorporated herein.

70. Defendant violated Plaintiff's rights under §1981 by denying her request of on or about May 16, 2019 to either modify her duties or move her to an open position because of her race.

71.  Defendant's denial of Plaintiff's request further contributed to her ICD moving in its pectoral pocket, which required a new ICD implantation.

72.  As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages, physical pain and suffering, temporary and permanent physical injuries, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated §1981;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate §1981;

12

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by providing back-pay and lost benefits with interest and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT V

## ADA / MAY 29, 2019

73.  Paragraphs 1-52 and 54-57 are incorporated herein.

74. Defendant violated Plaintiff's rights under the ADA by (a) discriminating against her because of her disability and/or (b) failing to provide a reasonable accommodation for her disability in denying her request of on or about May 29, 2019 to either modify her duties or move her to an open position.

75.  As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by providing back-pay and lost benefits with interest and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT VI

### TITLE VII / MAY 29, 2019

76.  Paragraphs 1-52 are incorporated herein.

77. Defendant violated Plaintiff's rights under Title VII by denying her request of on or about May 29, 2019 to either modify her duties or move her to an open position because of her race.

78.  As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated Title VII;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate Title VII;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by providing back-pay and lost benefits with interest and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT VII

### §1981 / MAY 29, 2019

79.  Paragraphs 1-52 are incorporated herein.

80. Defendant violated Plaintiff's rights under §1981 by denying her request of on or about May 29, 2019 to either modify her duties or move her to an open position because of her race.

81.  As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated §1981;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate §1981;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by providing back-pay and lost benefits with interest and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
Adam M. Porter, LLC
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: (205) 322-8999
Facsimile: (205) 402-4619
Email: adam@adamporterlaw.com


Plaintiff requests trial by struck jury.

s/ Adam M. Porter
Attorney for Plaintiff